NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS' STATEWIDE PENSION FUND and the TRUSTEES THEREOF,<br><br>Plaintiffs,<br><br>v.<br><br>INNOVATIVE DESIGN & DEVELOPMENT, INC., et al.,<br><br>Defendants. | Civil Action No. 22-02470<br><br>**OPINION**<br><br>May 20, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Plaintiffs' New Jersey Building Laborers' Statewide Pension Fund and the Trustees Thereof ("Fund" or "Plaintiffs") motion for summary judgment. (ECF 61, "Plaintiffs' MSJ.") Defendant E & N Construction filed an opposition and a cross-motion for summary judgment. (ECF 67, "E&N MSJ.") Defendants Innovative Design & Development, Inc. ("Innovative"), KLJ Construction, Inc. ("KLJ"), and J and S Concrete Inc. ("J and S") filed a separate opposition. (ECF 69, "Defs. Opp.") Plaintiffs filed an opposition to E&N's cross-motion for summary judgment and in further support of their motion for summary judgment. (ECF 77, "Plaintiffs' Opp.") Hammond Real Estate Partners, LLC ("Hammond") filed an untimely request to cross-move which was denied. (ECF 84.) The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1. For the reasons stated below, Plaintiffs' motion for summary judgment (ECF

61) is **GRANTED IN PART AND DENIED IN PART** and E&N's cross-motion for summary judgment (ECF 67) is **DENIED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiffs brought this action to recover withdrawal liability due to the Fund from Defendants, pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381(a). (*See generally* ECF 1, Compl.) The Fund was a trust fund established and maintained pursuant to § 302(c)(5) of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 186(c)(5), and include employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). (ECF 61-2, PSMOF ¶ 2.)

Defendants Innovative, E&N, J and S, Hammond, and KLJ are construction companies operating in New Jersey. (*Id.* ¶¶ 4-8.) Innovative was a contractor bound to a Collective Bargaining Agreement ("CBA") with the New Jersey Building Construction Laborers' District Council and its Local Unions ("Union") for work performed within the jurisdiction of the Union in New Jersey. (*Id.* ¶ 11.) Under the terms of the CBA, Innovative was obligated to hire members of the Union to perform bargaining unit work covered by the CBA and pay CBA-scale wages and benefits, including contributions to the Fund. (*Id.* ¶¶ 12-14.) On or about April 30, 2021, Innovative withdrew its recognition of the Union as its employees' bargaining representative and ceased making contributions to the Fund. (*Id.* ¶¶ 15-16.) The Fund calculated Innovative's withdrawal liability as $535,634.00. (*Id.* ¶ 17.)

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1, "Compl."), Plaintiffs' motion for summary judgment (ECF 61, Plaintiffs' MSJ), E & N's opposition and cross-motion (ECF 67, E&N MSJ), Innovative, KLJ, and J and S's opposition, (ECF 69, Defs. Opp.), and the parties' submissions regarding material facts (ECF 61-2, Plaintiffs' Statement of Material Facts "PSMOF"; ECF 67-1; ECF 67-2, Defendants' Statement of Undisputed Material Facts "DSMOF"; ECF 77-2), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

The Fund prepared a payment schedule for the withdrawal liability and demand for payment in accordance with the payment schedule and notified Innovative of failure to remit, placing Innovative in default. (*Id.* ¶¶ 18-19.) Innovative failed to cure the default, allowing the Fund to accelerate payment of withdrawal liability. (*Id.* ¶ 20.) Innovative also failed to demand arbitration to challenge the withdrawal liability assessment within the ERISA timeframe, permitting the Fund to seek payment for the full amount of withdrawal liability, together with other relief permitted under ERISA. (*Id.* ¶ 21.) The Fund thereafter commenced this action. (*Id.* ¶ 22.)

At all relevant times, Innovative, E&N, J and S, and KLJ employed workers who performed concrete and masonry work at construction sites in New Jersey. (*Id.* ¶¶ 26-48, 51, 56, 72, 74, 88-89, 103, 109, 118, 126-27, 136, 147-49, 162.) These entities operated out of the same office, shared office supplies, shared administrative staff, maintained the same payroll processes, and routinely do business with each other. (*Id.* ¶¶ 25-31, 35-36, 48, 63-64, 106-107, 112, 116-17, 126-27, 135, 147, 150, 152-54.) Innovative and J and S were almost entirely dependent on E&N for income and non-Union labor while E&N relied on Innovative to get onto Union construction projects. (*Id.* ¶¶ 27-29, 31, 48, 65, 80, 116.)

Plaintiffs filed the initial Complaint on April 28, 2022. (ECF 1.) Plaintiffs filed the instant motion for summary judgment against all Defendants on October 17, 2023. (ECF 61, Plaintiffs' MSJ.) E & N filed an opposition and a cross-motion for summary judgment on December 18, 2023. (ECF 67, E&N MSJ.) Innovative, KLJ, and J and S filed their opposition on December 18, 2023. (ECF 69, Defs. Opp.) Plaintiffs filed their opposition to E&N's cross-motion for summary judgment and in further support of their motion for summary judgment on February 15, 2024. (ECF 77, Plaintiffs' Opp.) E&N filed is reply on February 27, 2024. (ECF 78.) Hammond filed an untimely request to cross-move which was denied by Judge Allen on April 2, 2024. (ECF 84.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an

4

affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### III. ANALYSIS

#### a. Withdrawal Liability

Plaintiffs argue that Innovative waived its defenses to the Fund's assessment of withdrawal liability when Innovative failed to initiate arbitration, failed to contest the assessment, and failed to pay any liability in accordance with the payment schedule. (ECF 61, Plaintiffs' MSJ at 14-16.) Innovative's briefing does not address the waiver argument.

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), requires employers who withdraw from underfunded multiemployer pension plans to pay a "withdrawal liability." Withdrawal liability is a statutorily created liability wherein an employer is responsible for its allocable share of unfunded vested benefits after withdrawing from a plan. 29 U.S.C. §§ 1381(b), 1391(a). "An employer may discharge that obligation by making a series of periodic payments according to a postwithdrawal schedule set by the pension fund's trustees, or it may prepay the entire debt at any time." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 195 (1997).

The procedure imposed by the MPPAA is as follows. When an employer withdraws from a pension plan, the trustees must determine the amount of withdrawal liability owed. *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund v. Gotham Fuel Corp.*, 860 F. Supp. 1044, 1047 (D.N.J. 1993); 29 U.S.C. §§ 1381, 1382(1). Then the trustees must notify the employers of the amount of and schedule for withdrawal liability, and demand payment in accordance with that schedule. *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. §§ 1382(2), 1399(b)(1). The MPPAA then provides the employer with ninety days from the receipt of notice to request a review of the liability assessed by the trustees, identify any inaccuracies, and furnish any additional relevant information. *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. § 1399(b)(2)(A). Either party may initiate arbitration proceedings if they cannot agree on the amount of withdrawal liability owed. *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. § 1401(a)(1). However, if the employer fails to pursue arbitration, then "the withdrawal liability assessment becomes due and owing and the trustees may commence an action to collect the unpaid withdrawal liability from the employer." *Gotham Fuel Corp.*, 860 F. Supp. at 1047; 29 U.S.C. §§ 1401(b)(1), 1451. "An employer will waive its statutory rights to dispute aspects of the Fund's liability determination where arbitration is not demanded within the time period prescribed by the statute." *Bd. of Trustees of Trucking Employees of N.J. Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 295 n.5 (3d Cir. 2004) (citing *IUE AFL-CIO Pension Fund v. Barker & Williamson,* 788 F.2d 118, 129 (3d Cir. 1986).

Further, 29 U.S.C. § 1451(b) provides that the failure to make a withdrawal liability payment is to be treated as a delinquent contribution within the meaning of 29 U.S.C. § 1145. *United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 134 (3d Cir.1986), *aff'd*, 481 U.S. 735, (1987). Thus, Plaintiffs' action to recover withdrawal liability is treated as an action brought under Section 1145. Section

1132(g) provides that in any action brought by a pension plan to enforce Section 1145 in which a judgment is awarded in favor of the plan, the court must award interest on the unpaid contributions, reasonable attorneys' fees and costs, and the greater of either 20% of the unpaid contributions or an amount equal to the accrued interest. 29 U.S.C. § 1132(g). Such an award is mandatory. *See Yahn*, 787 F.2d at 134 ("§ 1132 made attorney's fees, costs and liquidated damages mandatory upon a judgment in favor of a pension plan"); *see also Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Gotham Fuel Corp.*, 860 F. Supp. 1044, 1053 (D.N.J. 1993) (stating that "[a]n action to recover withdrawal liability is treated in the same matter as a delinquent contribution matter"). "Unpaid contributions, interest, and liquidated damages generally are considered 'sums certain' pursuant to the calculations mandated in ERISA and the parties' contractual agreements." *Trs. of the Teamsters Pension Tr. Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, No. 10-3000, 2011 WL 1114175, at *4 (D.N.J. Mar. 23, 2011). "However, the reasonableness of the requested attorney's fees and costs is a matter that requires the Court to exercise discretion." *Id*.

Here, Innovative withdrew its recognition of the Union as its employees' bargaining representative on or about April 30, 2021. (ECF 61-2, PSMOF ¶ 15.) The Fund subsequently calculated Innovative's withdrawal liability as $535,634.00. (*Id.* ¶ 17.) On or about November 5, 2021, the Fund prepared a payment schedule for the withdrawal liability and demand for payment in accordance with the payment schedule, forwarding the same to Innovative. (*Id.* ¶ 18.) After the Fund did not receive the first quarterly installment, on or about February 7, 2022, the Fund advised Innovative of its failure to remit the quarterly installment, noting that failure to do so placed Innovative in default of its obligation under ERISA. (*Id.* ¶ 19.) Innovative did not cure the default and failed to demand arbitration. (*Id.* ¶¶ 19-21.) As such, Innovative failed to take any of the

7

statutorily mandated steps to challenge the assessment, and the time for doing so has run. As such, the Court finds that there exist no genuine issues of material fact as to Innovative's withdrawal liability. Plaintiff's motion for summary judgment as to the withdrawal liability issue is **GRANTED**.

### b. Common Control Theory

Plaintiffs argue that Innovative, J and S, KLJ, and Hammond are under common control, thereby rendering them jointly and severally liable for the assessed withdrawal liability. (ECF 61, Plaintiffs' MSJ at 17.) Innovative, J and S, and KLJ argue that Plaintiffs have not shown that J and S, KLJ, E&N, and Hammond are a single employer. (ECF 69, Defs. Opp. at 7-9.)[2]

Pursuant to the MMPPA, "when a contributing employer withdraws from participation in a fund, the employer is responsible for [its] pro rata share of the unfunded vested liability remaining in the fund at the time of withdrawal, subject to certain adjustments." *Bd. of Trs. of*

---

[2] Plaintiffs note in their reply that Innovative, KLJ, J and S, and Hammond failed to file a responsive Rule 56.1 Statement and argue that this Court should strike Hammond's opposition as an unsigned paper. (ECF 77 at 3-6.) Hammond's counsel at the time did not participate in briefing the motion for summary judgment. Counsel for Innovative, J and S, and KLJ later entered an appearance on the docket on behalf of Hammond. (ECF 81.) Though Plaintiffs are correct in noting the procedural deficiency of the unsigned paper, the Court accepts Hammond's subsequent, though untimely, amelioration. With respect to the Rule 56.1 Statement, Defendants Innovative, J and S, KLJ, and Hammond failed to submit a response to Plaintiffs' statement of material facts in violation of Local Civil Rule 56.1. Our Local Civil Rules require that motions for summary judgment be accompanied by a statement of material facts not in dispute – separate from any brief – setting forth material facts with citations to relevant supporting documents. L. Civ. R. 56.1(a). The Local Civil Rules further require the opponent of a summary judgment motion to file a responsive statement of material facts responding to each paragraph of the movant's statement, asserting agreement or disagreement, "and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." *Id.* Therefore, "any statement, or portion thereof, that is not clearly denied – in substance, not merely with the label 'disputed' – and with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted." *Boyd v. City of Jersey City*, No. 15-0026, 2018 WL 2958468, at *1 n.2 (D.N.J. June 13, 2018) (quoting *Juster Acquisition Co. LLC v. N. Hudson Sewerage Auth.*, No. 12-3427, 2014 WL 268652, at *1 n.1 (D.N.J. Jan. 23, 2014)); *see also* Fed. R. Civ. P. 56(e) (providing that, in the event that a party fails to properly address an assertion of fact, a court may provide an opportunity to properly address the fact, consider the fact undisputed, grant summary judgment, or issue any other appropriate order). Because Defendants Innovative, J and S, KLJ, and Hammond failed to meet their burden under the Local Civil Rules, the Court finds it appropriate to consider the facts as set forth in the Plaintiffs' Statement of Material Facts as undisputed for the purposes of this motion. *See Coastal Jersey Holdings LLC v. Giordano*, No. 22-02024, 2023 WL 7545301, at *5-6 (D.N.J. Nov. 14, 2023); *see also Lee v. Valvoline Instant Oil Change*, No. 21-12825, 2023 WL 6579004, at *2-3 n.3 (D.N.J. Oct. 10, 2023).

*Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 498 (3d Cir. 1992) (citing 29 U.S.C. § 1381(b)). Any businesses "under common control" of a contributing employer are also liable when an employer withdraws from a fund. *Id.* (citing 29 U.S.C. § 1301(b)(1)). While the statute itself does not define specifically "under common control," it "adds that regulations implementing this provision 'shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c)'" of the Internal Revenue Code. *United Food & Commercial Workers Union v. Progressive Supermarkets*, 644 F. Supp. 633, 637 (D.N.J. 1986) (quoting 29 U.S.C. § 1301(b)(1)).

Under the operative definition of "common control," companies are essentially held to be under common control "where five or fewer persons own at least 80% of the voting stock or share value of each corporation, and the same persons own more than 50% of the voting stock or share value, taking into account each person's interest only to the degree of identical stock ownership in each corporation." *Doherty v. Teamsters Pension Trust Fund*, 16 F.3d 1386, 1390 n.3 (3d Cir. 1994) (citing 26 U.S.C. § 1563(a)(2)). When enacting the common control theory, Congress sought to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities. *See Brown v. Astro Holdings*, 385 F.Supp.2d 519, 530 (E.D. Pa. 2005).

To extend withdrawal liability to other entities, one must show that the entity is (1) a trade or business; and (2) under common control with the withdrawing employer. *N.J. Building Laborers' Statewide Pension Fund and Trustees Thereof v. Richard A. Pulaski Constr.*, 322 F. Supp. 3d 546, 557 (D.N.J. 2018); *see also Gov't Dev. Bank for P.R. v. Holt Marine Terminal, Inc.*, 765 F.Supp.2d 710, 714-15 (E.D. Pa. 2011). To prove factor one, courts have relied on the tax law (IRS) definition of trade or business. *Comm'r v. Groetzinger*, 480 U.S. 23, 35 (1987). In *Groetzinger*, the Court explained that to be engaged in a trade or business one "must be involved

in [an] activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit." *Id.* In reviewing trade or businesses, courts have added an additional inquiry: "whether characterizing an entity as a 'trade or business' will fulfill the underlying purpose of the MPPAA: to prevent employers from avoiding withdrawal liability by fractionalizing their operations." *Gov't Dev. Bank*, 765 F.Supp.2d at 715.

Here, Innovative, J and S, KLJ, and Hammond qualify as "trade[s] or businesses," as defined by the IRS. These companies engaged in "regular and continual involvement in [construction], primarily for the purpose of income or profit." *New Jersey Carpenters Pension Fund*, 68 F. Supp. 3d at 559. The submissions to the Court demonstrate that Innovative was a contractor, J and S is an equipment holding company, and KLJ is a construction company. (ECF 61-2, PSMOF ¶¶ 11, 51, 62.) However, although Innovative, J and S, KLJ, and Hammond are not linked by a parent corporation, there appear to be at various times overlapping ownership interests between them. (*Id.* ¶¶ 50, 57, 60, 82, 123; ECF 67-1 ¶¶ 50, 57, 60, 82, 123.). *See Doherty*, 16 F.3d at 1390 n.3.

In addition, the inquiry continues as discussed in *New Jersey Carpenters Pension Fund*: courts should not be "inflexible" in applying these precepts and should undertake a factual inquiry to determine whether an employer is striving to circumvent withdrawal liability by "fractionalizing their operations." 68 F. Supp. 3d at 559 (quoting *Gov't Dev. Bank*, 765 F.Supp.2d at 715). In other words, the Court is not constrained by the IRS definitions set forth above and should otherwise seek to determine whether the record before it evidences an attempt to undermine the underlying purpose of the MPPAA: "to prevent employers from avoiding withdrawal liability." *Id*. (citation omitted); *see also Brown*, 385 F.Supp.2d at 533. In the Court's view, the totality of the facts presented in the evidentiary records before it raises at least some issues of fact as to whether

10

Innovative, J and S, KLJ, and Hammond sought to evade withdrawal liability. Since this fact-laden inquiry is better suited for determination at trial, the Court **DENIES** Plaintiffs' motion for summary judgment and allows this matter to proceed to trial.

### c. Alter Ego and Successor in Interest Theories

Plaintiffs argue that all Defendants are alter egos of one another or a single integrated enterprise, making Innovative's co-Defendants successors. (ECF 61, Plaintiffs' MSJ at 20.) E&N argues that it is not an alter ego or successor of Innovative because there is no substantial identity of ownership, equipment or customers, operations, or substantial degree of control between E&N and Innovative; E&N also argues there was no improper motive for its formation and that E&N and Innovative were not single employers. (ECF 67, E&N MSJ at 5-14.)[3] Innovative, J and S, and KLJ argue that there is no substantial continuity between Innovative, KLJ, J and S, and Hammond to conclude that these Defendants are liable for Innovative's withdrawal liability; they also argue that Plaintiffs did not show that Defendants are alter egos of one another or a single integrated business. (ECF 69, Defs. Opp. at 4-7.)

In defining who is an "employer," for purposes of withdrawal liability, courts have imposed liability upon entities that are the alter ego, successor, or member of a controlled group, requiring them to pay the withdrawal liability of the employer who was responsible for remitting contributions to the pension fund. *Korea Shipping Corp. v. New York Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Trust Fund*, 880 F.2d 1531, 1536 (2d Cir. 1989). The burden of proof for establishing alter ego theory "rests with the party attempting to negate the existence of a

---

[3] The Court will also assess the pending cross-motion in this section. In its parallel cross-motion for summary judgment, E&N argues that E&N are not "employers" under ERISA, are not under common control with Innovative, and are therefore not liable for Innovative's withdrawal liability. (ECF 67, E&N MSJ at 4-16.) E&N asks the Court to grant summary judgment in its favor. (*Id.*) Plaintiffs opposed and argued that the material facts as presented by E&N are disputed thereby precluding summary judgment in its favor. (ECF 77, Plaintiffs' Opp. at 11-15.)

11

separate entity." *Trs. Of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003). Alter ego liability must be established by clear and convincing evidence and is "notoriously difficult for plaintiffs to meet." *Id*. at 192; *see also Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001). The alter ego doctrine is meant to prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making "a mere technical change in the structure or identity of the employing entity . . . without any substantial change in its ownership or management." *NLRB v. Hosp. San Rafael, Inc.,* 42 F.3d 45, 51 (1st Cir. 1994) (internal quotation marks and citation omitted).

In applying the alter ego doctrine, one must ask whether the companies have "substantially identical management, business purpose, operation, equipment, customers, and supervision, as well as ownership." *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 146 (3d Cir. 1994). A plaintiff need not establish all these factors to prove alter ego status. *Id*. "[A]n intent to evade [LMRA or ERISA] is an important, but not an essential, factor." *Id*. at 151; *see also Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307-09 (1st Cir. 1998). This test is applied with a degree of flexibility, in light of the general federal policy of piercing the corporate veil when necessary, to protect employee benefits. *Ret. Plan of UNITE HERE Nat. 7 Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010); *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383 (2d Cir. 1989).

Here, when considering the factors discussed above, the Court determines that the evidentiary records before it raise issues of fact as to the identity of ownership between Innovative and Defendants as discussed in Section III.B, *supra.* In addition, though E&N's formal ownership did not overlap with Innovative's ownership (ECF 67-2, DSMOF ¶ 3), ERISA "require[s] courts

to look beyond how the parties label, or structure themselves" and to "look to the substance of the relationships." *Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*, 943 F.3d 49, 59 (1st Cir. 2019). Genuine issues of material fact remain as to whether the companies here share "substantially identical management, business purpose, operation, equipment, customers, and supervision, as well as ownership." *See Stardyne, Inc.*, 41 F.3d at 146. Both Plaintiffs and E&N fail to establish that there do not exist genuine issues of material fact to support granting their respective motions for summary judgment.  Here again, this fact-laden inquiry is better suited for determination at trial, the Court will deny Plaintiffs' motion for summary judgment and E&N's cross-motion for summary judgment and will allow this matter to proceed to trial.

Turning to successor liability, the doctrine of successor liability applies where a successor company purchases the assets of a company but does not acquire the seller's liabilities. *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995). The successorship liability doctrine is invoked where the transfer of the assets undermines federal labor interests, such as failure to pay employee benefits to a union pension fund. *Sullivan v. Dollar Tree*, 623 F.3d 770, 780-81 (9th Cir. 2010). Generally, the doctrine may be applied where, under the totality of the circumstances, "there is a 'substantial continuity' between the enterprises." *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 293 (9th Cir. 1987) (quoting *Fall River Dyeing and Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987)). As the *Sullivan* Court noted, fairness is a prime consideration in its application. *Sullivan*, 623 F.3d at 782. In determining fairness, courts consider a number of factors:

    (a) whether there has been a substantial continuity of the same business;
    (b) whether the same employer uses the same plant;
    (c) whether the same work force is used;
    (d) whether the same jobs exist under the same working conditions;

  (e) whether the same machinery, and/or equipment is used;
  (f) whether the same supervisors are employed;
  (g) whether the same methods of production are used;
  (h) whether the same product is produced;
  (i) whether the body of customers is the same.

*NLRB v. Jeffries Lithograph*, 752 F.2d 459, 463 (9th Cir. 1985) (citation omitted).

Here again, the Court determines that there are genuine issues of material fact that preclude granting a motion for summary judgment for either Plaintiffs or E&N. The factual records submitted by the parties reflect the necessity of a greater fact-intensive inquiry best-suited for trial. There exist disputes as to the substantial continuity of the same business, and the overlaps of location, work force, supervisors, machinery and equipment, etc. (ECF 77 at 15-22.) As such, the Court **DENIES** Plaintiffs' motion for summary judgment with respect to this issue and E&N's cross-motion for summary judgment at this time.

### IV. Conclusion

For the reasons stated above, Plaintiffs' motion for summary judgment (ECF 61) is **GRANTED IN PART AND DENIED IN PART** and E&N's cross-motion for summary judgment (ECF 67) is **DENIED**. An appropriate order follows.

              */s/ Jamel K. Semper*
              **HON. JAMEL K. SEMPER**
              **United States District Judge**

Orig: Clerk
cc:  Jessica S. Allen, U.S.M.J.
    Parties